816-15 ORIGINAL

TEXAS COURT OF CRIMINAL APPEALS
AT AUSTIN

COA CASE No. 05-13-01586-CR
PD- 0816-15

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 17 2015

Abel Acosta, Clerk

No. 05-13-01586-CR
IN THE COURT OF APPEALS
FIFTH DISTRICT OF TEXAS
OF DALLAS

ON APPEAL FROM THE CRIMINAL DISTRICT
COURT No. 6 OF DALLAS COUNTY
TRIAL COURT No. 27326

| | |
|---|---|
| Silvia Romero<br>APPELLANT<br><br>v.<br><br>STATE OF TEXAS<br>APPELLEE | COA CASE No. 05-13-01586-CR<br>Tr. CT. No. F01-16575-X<br>PD- 0816-15 |

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

SEP 17 2015

Abel Acosta, Clerk

Silvia Romero, Prose
TDCJ # 01883677
1916 N. Hwy 36 Bypass
Gatesville, Texas. 76596.

-1-

## IDENTITY OF PARTIES

    PURSUANT TO THE PROVISIONS OF RULE 38.1(a) Texas Rules Of Appellate Procedure, a complete list of the Names of all parties to this action and counsel are as follows:

PARTIES:        Silvia Romero, Appellant

                 State Of Texas, Appellee

ATTORNEYS FOR APPELLANT:  James G. Jamison,
                          Trial Counsel
                          529 W. Twelfth Street
                          Dallas, Dallas Co. Tx. 75208

                          Dan Wood, Counsel on Appeal
                          4303 N. Central Expressway
                          Dallas, Dallas Co, Tx. 75205

Attorneys for the state:  Hon. Craig Watkins
                          Criminal District Attorney
                          Crowley Court's Building
                          133 N. River Front Blvd. LB19
                          Dallas, Dallas County, Tx. 75207

                          Sherre Sweet, Asst. Criminal
                          District Attorney, Trial Counsel.

-2-

# INDEX OF AUTHORITIES

## CASE LAW:

Almanza v. State, 686 S.W. 2d 157 (Tex. Crim. App. 1985)

Clayton v. State, 235 S.W. 3d 772 (Tex. Crim. App. 2007)

Haggins v. State, 785 S.W. 2d 827 (Tex. Crim. App. 1990)

Hooper v. State, 214 S.W 3d 9 (Tex. Crim. App. 2007)

Jackson v. Virginia, 443 U.S. 307, 99 S.CT 2781, 61 L. Ed. 2d 560 (1979)

Lafler v. Cooper, 566 U.S. (March 12, 2012 No. 10-209)

Patterson. v. State, 49 S.W. 3d 294 (Tex. App.—FT WORTH 2001)

Patterson v. State, 101 S.W. 3d 150 (Tex. App. FT. WORTH (2003)

Saxton v. State, 804 S.W. 2d 910, 914 (Tex. Crim. App. 1991)

## STatutes And Rules:

Tex. pen. Code E 603 (b)

Tex. pen. Code § 603 (c)

Tex. Pen. Code § 22.04 (a) (1)

Tex. Pen. Code § 22.04 (c) (1)

Tex. Pen. Code § 22.04 (c)

Tex. Pen. R. APP. Pro. 21.8 (c)

Tex. R. APP. Pro. 43.2

## OTHER MATERIAL:

Texas Criminal Jury charges § 6: 1440 (James Publishing, Rev. 11, 12/2010 APPELLANT'S AFFIDAVIT

TAYLOR v. STATE, 332 S.W. 3d 483 (TEX. CRIM. APPeal 2011)

UNITED STATES v. CRONIC, 466 U.S. 648, 658, 104 S.CT. 2039. 2046. 2047. 80 L.Ed. 2d 657 (1984)

JOHNSTON v. STATE, 115 S.W. 3d 761, 764 (TEX. APP. Austin 2003), AFF'D, 145 S.W. 3d 215 (Tex. CRIM. APP. 2004)

Ngo v. STATE, 175 S.W. 3d 738, 743-44 (Tex. CRIM. APP. 2005)

ALLEN v STATE, 253 S.W. 3d 260, 264 (TEX. CRIM. 2008)

HuTCH v. STATE, 922 S.W. 2d 166, 171 (Tex. Crim. APP. 1996)

Thompson v. STATE, 95 W. 3d 808, 812-13 (Tex. CRIM. APP. 1999)

McFARLAND v. STATE, 845 S.W. 2d 824, 843 (TEX. CRIM. APP. 1992)

McMann v. Richardson, 397 U.S. 759, 771, n. 14, 90 S.CT. 1441, 1449, 25 L.Ed 2d 763 (1970).

United STATE v. Morrison, 449 U.S. 361, 364, 101 S.CT. 665, 667, 66 L.Ed. 2d 564 (1981)

CUYLER v. SULLIVAN, 446 U.S. 335, 343, 100 S.CT. 1708, 1715 64 L.Ed. 2d. 333 (1980)

ANDERS v. CALIFORNIA, 386 U.S. 738, 743, 87 S.CT. 1396, 1399, 18 L.Ed. 2d 493 (1967)

STRICTLAND v. WASHINGTON, 466 U.S. 668. 104 S.CT. 2052, 80 L.Ed. 674 (1984).

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL.

INDEX OF AUTHORITIES.

STATEMENT OF CASE.

ISSUES PRESENTED.

SUMMARY OF FACTS.

SUMMARY OF THE ARGUMENT.

ARGUMENT AND AUTHORITES:
Issue Number ONE: The GUIDENCE IS INSUFFICIENT TO Support The Conviction.
ISSUE Number TWO: The Trial Court Committed EGREGIOUS ERROR By Charging The JURY On The Improper Definition OF the Culpable MENTAL State OF Acting Intentionally.
ISSUE Number Three: Appellant DID NOT Receive Effective Assistance OF Counsel PRIOR To TRIAL, AT PRE-Hearings On Motions, and, AT TRIAL:
1) Failure To Conduct Pre-Trial Investigations by Meeting with Appellant 2 times in two years and not allowing or bringing an Interpreter;
2) Failure to Conduct Pre-Trial Discovery Depositions

2) Failure To Conduct Pre-Trial Discovery Depositions Of Appellee's Medical, Radiological and Neurological experts;

3) Failure To Conduct Pre-Trial Discovery Depositions Of Court-Appointed Medical Experts and then failing to Present Medical Expert at Trial;

4) Failure To Object To Jury Charge Instruction with regard to the improper Definition Of Culpable Mental State Of Acting Intentionally, even when asked by the Court;

5) Failure to Conduct any Pre-Trial Depositions and/or Interviews Of Witnesses;

6) Failure To investigate and/or depose any current medical physicians Currently treating Complainant Child (M.I);

7) Failure To Object to hear-say Testimony relevant to Complainant's Current medical condition;

8) Failure to object to state's argument.

9) Failure to subject "prosecutions Case to "meaningful adversarial testing;"

10) Misadvise given to Appellant to turn down Plea Of 10 years by promising Appellant that defense's medical expert would be presented and that she (Appellant) would not have to spend 10 years in prison.

PRAYER

Certificate OF SERVICE

— 5—

To The Honorable Justices Of the Court Of Appeals: Silvia Romero, Appellant Prose in this Cause, Files This her Petition For Discretionary Review.

## STATEMENT OF CASE

ON October 8, 2001, Appellant, Prose, Was charged by indictment for injury to a child with serious bodily injury (CR:20). A jury trial was held and Appellant's trial Counsel entered a plea of not guilty on behalf of his Client (5RR:8-9). The jury returned a Verdict of guilty as indicted (CR:85) (8RR:41). After a trial on punishment, The jury returned is Verdict of guilty (9RR:45). In Accordance with the jury verdict Appellant was Sentenced to Life Imprisonment in the Institutional Division of the Texas Departament of Criminal Justice, and assessed a $10,000 Fine (CR:96) (9RR:45-46).

Appellant timely filed her Notice of Appeal (CCR:100). Appellant also timely filed her Motion for New Trial; however, the motion was denied by operation of law (CR:99). See, Rule 21.8(c) Tex. R. App. Pro.

THE Record is cited in this brief/PDR as Follows: The Reporter's Record, Consisting of ten Volumes and one Supplemental Volume, are referred to as "RR" proceeded by the volume Number and followed by the Page Number, the Clerk's Record is Referred to as "CR" followed by the page Number.

-6-

## Issues Presented

Issue Number One The Evidence Is Insufficient To Supper The Conviction.

Issue Number Two: The Trial Court Committed Egre-Gious Error By Charging The Jury On The Improper Definition Of The Culpable Mental State Of Acting Intentionally.

Issue Number Three: Appellant Did Not Recieve Effective Assistance Of Counsel Prior To Trial, at Pre-Hearings on Motions and at Trial:

1) Failure To Conduct Pre-Trial Investigations and by meeting with Appellant only two(2) times in two years and not allowing or bringing an Interpreter,

2) Failure To Conduct Pre-Trial Discovery Depositions Of Appellee's medical, Radiological and neurological experts

3) Failure To Conduct Pre-Trial Discovery Depositions Of Court-Appointed Medical Experts and Then failing to Present Medical Expert at Trial;

4) Failure to Object To Jury Charge Instruction with regard to the improper Definition Of Culpable mental state Of Acting Intentionally, Even when asked by the Court;

5) Failure to Conduct any Pre-Trial Depositions and/or Interviews Of Witneses;

6) Failure to Investigate and/or depose any current medical physicians Currently treating Complainant Chid (MI) (7) Failure To Object to hear-say testimony relevant To.

-7-

Complainant's Current Medical condition;

8) Failure to object to state argument;

9) Failure to subject Prosecution's case to "maningful adversarial testing,"

10) Misadvise given to Appellant to turn down Plea of 10 years by promising Appellant that defense's Medical Qxpert would be presented and that she (Appellant) would not have to spend 10 years in prison.

7-b

## Summary of Facts

APPELLANT called 911 when her two year old step-daughter Mariangella Iniesta, was unresponsive (5RR: 20, 25., 7RR: 137-38). Medical personnel, or EMT, Responded to the address in Carrollton, Texas, and a child was found laying on the carpet, unresponsive and with dilated pupil— Symptoms indicative of a brain injury (5RR: 48, 52-55). No visible injuries to the child were seen by the EMT (5RR: 53). Appellant and another small child were also present at the apartment when the medical personnell arrived (5RR: 52). At the time of trial, the child, Mariangella, did not appear and was living in México (5RR: 41). According to her aunt, Mariangella, at age 15 is not able to speak, walks with difficulty, one hand is immobile, cannot wash or feed herself and wears a diaper (5RR: 39-40).

AT The scene, Appellant told a para Medic, Jose Estrada, The child has fallen from a couch (5RR: 97). At the hospital, Appellant made a statement, in an affidavit form, to a child Protective Services Worker (7RR: 61). See, State Ex. 29B- the affidavit stated the child, Mariangella, was playing with appellant's daughter and Appellant was in the bathroom when she heard a scream (7RR: 63). Thinking the child, Anakaren, had fallen, Appellant came into the Room to find Mariangella, laying in the middle of the chimney (sic) (7RR: 63). Appellant suggested mariangella had fallen from the couch or the rocking chair (7RR: 63). Later police Returned to the apartment to photograph the arrangement of for niture including a small, child size, Rocking chair (5RR: 78).

-8-

A few days after the incident at the apartment, Appellant went to the police station and gave a written statement to the police (7RR:71). See, State Ex. 1B. The statement said that the child was playing with the television remote, would not calm down, and Appellant grabbed the child's ARM AND pushed the child hard onto the chair (7RR:52). According to the statement, the chair fell backwards, the child hit her head on the floor and was unresponsive (7RR:52-53).

DR: Pamela Okada, an emergency doctor at Childrens's Medical Center of Dallas, testified she did not specifically remember treating Mariangella in 2001 (6RR:24-28) However, after reviewing the records, Dr. Okada stated the records reflect that she treated the child and learned the history given to medical personnel was that the child was injured from a fall from a couch onto either carpet or a chimney and that the mother stated she was not in the room when the injury occurred (6RR:29). The child was unresponsive, no eye movements, but there were movements of her arms which is called "posturing" which is an abnormal motor function (6RR:30). A CAT scan revealed a large skull fracture and subdural hematoma (6RR:32). Dr. Okada opined that the injury seen was not consistent with the history of falling off a couch and that the injury was a result of non-accidental trauma and was intentionally inflicted (6RR:33). In an affidavit prepared on September 9, 2001, Dr. Okada recommended in this case that CPS, police, social worker and REACH and Opthalmology consults be done for non-accidental trauma (6RR:35). See State Ex. 26.

-9-

A pediatric neurosurgeon, Dr. Dale Swift, testified that on September 9, 2001, he operated on the two-year old child, Mariangella Iniesta, because of a subdural hematoma (7RR:8). The child's brain was swelling and if not treated would have resulted in her death (7RR:12-13). Dr. Swift said that the patient's history of falling from a couch was not consistent with the injury he saw (7RR:20). Such an injury would require much more force (7RR:21). The doctor opined the injury was not accidental, (7RR:22).

A pediatrician, Dr. Matthew Cox, testified the medical records show the child had an old upper arm fracture, a left-side skull fracture, a back-of-head skull fracture, brain swelling and hemorrhage (7RR:110-11, 114-16). Also, the child's pancreas was torn into two pieces which would require blunt force trauma to achieve (7RR:116-17). The doctor opined the trauma was inflicted and was not accidental and was child abuse (7RR:119-20). The doctor further opined it would be obvious to the person who inflicted the trauma that their action would be injurious (7RR:120). Mariangella suffered serious bodily injury (7RR:122). Dr. Cox did not personally examine Mariangella (7RR:126-27).

Appellant testified to the jury that she heard a noise, found the child on the floor near the chimney, and the rocking chair was turned over (7RR:137). Appellant tried to revive the child and called 911 (7RR:136-37). Appellant believed that Mariangella fell from the rocking chair (7RR:137). Mariangella needed to goto the hospital because "...she was asleep. she wasn't waking up." (7RR:141). Later when Appellant gave her statement to police, the.

-10-.

Appellant said the police were yelling at her and told her what to write in her statement to police (7RR:146-49). However, Officer Jose Flores testified that he was present when Appellant gave her statement and that the words on the statement were the Appellant's own words (RR6:19).

After being released on bond, Appellant later appeared in court but afterward she believed she was free to go to Mexico (7RR:160-161). Appellant testified that the injury to Mariangella was an unfortunate accident and that she, Appellant, would never harm a child (7RR:149).

## SUMMARY OF ARGUMENT

Appellant was convicted of the first degree felony of injury to a child. Appellant's conviction should be reversed and an acquittal entered because there is no evidence that Appellant intended to cause the injuries resulting from her actions. In the alternative, the judgment of conviction should be modified and reformed to convict Appellant only of the second degree felony offense of recklessly causing the injury and the case should be remanded to the trial court for a punishment trial only. Or in the alternative, Appellant's conviction should be reversed as a result of ineffective assistance which caused the rejection of a plea leading to a more severe sentence at trial, the remedy must neutralize the taint of the actual constitutional violation the sole remedy in these circumstances is to ORDER the state to reoffer the plea agreement. Or in the evident alternative Appellant's ineffective assistance of counsel throughout — the entire record, Appellant's conviction should be reversed and an acquittal entered. -11-

The Jury charge was submitted without objection (Issue 3-Ineffective assistance of counsel); however, the trial court committed egregious error in its charge by incorrectly instructing the jury on the definition of the culpable mental state of intentional or intent. the incorrect instruction allowed the jury to find appellant guilty because of Appellants intentional actions of throwing or pushing complainant rather than finding Appellant guilty of first degree felony injury to a child because of Appellant's intent to cause the injury sustained.

The right to be represented by counsel is by far the most important of a defendant's constitutional rights because it affects the ability of a defendant to assert a myriad of other Right. The right to the assistance of counsel is guaranteed by the sixth and Fourteenth Amendments to the United States Constitution and article 1, Section 10 of the Texas Constitution. This right to the assistance of counsel has long been understood to include a "Right to the effective assistance of counsel." The integrity of our criminal Justice System and the fairness of the adversary criminal process was not assured in Appellant's case because she was not represented by an effective attorney. Trial Counsel for Appellant failed to object on the record to the Jury charge Instruction with regard to the improper definition of the culpable mental state of acting intentionally, Asstated above, the incorrect instruction allowed the jury to find Appellant guilty because of Appellant's intentionally actions of throwing or pushing complainant rather than finding Appellant guilty of first degree felony injury to a.

-12-

Child because of Appellant's intent to cause the injury Sustained, Trial Counsel's failure to object to the instruction and definition allowed the State's Case for conviction to be made clearly and significantly more persuasive due to the incorrect charge Definition on intentional as applied to the offense of injury To a child,

Trial Counsel's errors were so significant that Appellant was so severely prejudiced that it should be unnecessary to establish the prejudice prong of Strickland. Prejudice is presumed in situations where the likelihood of Counsel having provided Effective assistance is Extremely small such as where counsel failed completely to subject, The prosecution's case to "Meaningful adversarial testing. Strickland

In Appellant's case trial Counsel's strategy as indicated in the record available to Appellant was so ill-chosen that it rendered her trial fundamentally un fair, Trial Counsel allowed The State time again to testify during opening and closing with absolutely no objection During Appellant's testimony basically accused Appellant of understanding and comprehending English (as a first language) when the Court had allowed an interpreter to be used as Appellant's command of the English language, was, to say the least, poor and Extremely limited, thus Causing extreme prejudice against Appellant. Trial Counsel's failure To adequately present expert testimony to the jury was inconceivable Considering the gravity of the injuries alleged to have been Caused intentionally by Appellant upon Review of the record available to Appellant, The.

-13-

Court allowed the appointment of a Medical Expert, Dr. Mattew Cox on October 2, 2012, The Order is signed and dated almost a full year before Appellant's Trial, The Record is not clear why or when Dr. Mattew J. Cox became a hostile expert witness, however, the records indicate another Medical Expert was appointed and approved by The Court on March 19, 2013. The medical Expert appointed was Dr. Steven C. Gabaeff, Further, the Court authorized payment of reasonable Expert fees and reimbursable Expenses upon submission of a statement of the fees and Expenses incurred. The record indicates that no Requests for Pre-Authorization Expenses for Dr. Steven Gabaeff on behalf of Appellant, Silvia Romero were Submitted until the 16th of September, 2013, The day Final Hearings and Voir Dire began. The Judge denied the Request. The record obtained by Appellant does not Contain or indicate that any Medical Expert report was filed by Trial Counsel for Appellant or that Any depositions were taken by Trial Counsel with regard to The medical Expert Trial Counsel attempted to get travel Expenses for. Trial Counsel's failure to adequately present Expert testimony to the Jury was and should be Considered ineffective assistance of Counsel. There Could have been no Reasonable Trial strategy in not presenting Expert Medical testimony on behalf of Silvia Romero. In fact at a Pre-Trial Hearing on August 28, 2013, when the Trial Court Judge asked Appellant whether she wanted to accept The State's

-14-

Plea offer of ten (10) years, the Trial Judge asked her if she wished to confer with her trial counsel. Trial Counsel Jamison and Appellant conferred and Jamison advised Appellant that he had a medical expert he was going to present on her behalf and that "she would not have to spend ten years incarcerated." Jamison, Knowing the gravity of the case and the voluminous amount of medical records and rehabilitation records, gave Appellant advise and /or misadvice to turn down the State's offer. Appellant remained under the understanding that the medical expert, Dr. Steven Gabaetz would be presented, all the way up to the time the case rested on both sides. The record indicates trial counsel tried to cover both his failure to present expert testimony on Appellant's and his misadvice to reject the State's offer by promising to present the expert at trial at the conference held on August 28, 2013. On the record trial counsel indicates he had been on the case a long time and that the medical Records were extensive and that with experts with Their schedules "some needed as much as an eight month advance window." Even on the record, trial counsel could not admit to Appellant he had failed to file a timely motion for Pre-Expenses, that same had been denied and that no medical expert would be presented on her behalf. Trial Counsel never informed Appellant that he would fail to bring and /or present on her behalf any medical Expert testimony. Trial Counsel failed to conduct any meaningful investigation into the accurate and

-15-

medically informed up-to-date information regarding the Child's (M-I) Current medical status. Instead the only alleged up-date on the Child's Condition was presented by the State through lay-witness, Alexamari Villareal, who the Records available to Appellant show that Trial Counsel neither Cross-examined, interviewed and/or deposed to determine when the last time witness Villareal had seen, observed and/or cared for the child (M.I) FURTHER, Trial Counsel made no attempt to Determine whether the Child was progressing under medical Care and rehabilitation in Mexico where She resides Trial Counsel's failure to Conduct any meaning ful Pre-Trial investigations, interviews, depositions and/or discovery was so Complete tha he failed to Subject the prosecution's Case to "Meaning ful adversarial testing". His failure to meet with Appellant to develope witnesses information and interviews and to object to the hear-say Testimony on The medical Condition of Child (MI) were Errors So Serious That Trial Counsel was not functioning as "Counsel" guaranteed the Appellant by the Sixth Amendment. Second, the defendant Appellant argues that Counsel's Performance was so deficient it prejudiced the Appellant at trial.

## ARGUMENT AND AUTHORITIES
### ISSUE NUMBER ONE

Issue No. ONE (Restated): The evidence is insufficient

To support Appellant's Conviction for intentionally or Knowingly Causing Serious bodily in Jury to a Child.

On May 23, 2014, Appellant filed her Brief with The Court of Appeals, Fifth District of Texas at Dallas by and through her appellate Attorney of Record, DAN WOOD, JR. On April 17, 2015, the Court of Appeals, Fifth District of Texas at Dallas, based on the Court's opinion, the Judgment of the Trial Court was MODIFIED as follows: 1) The portion of the Trial Court's Judgment that states "statute for Offense" 22.01 Penal Code." is modified to state "statute for Offense" 22.04 Penal code"; and 2) The portion of the trial Court's Judgment that states "Findings On Deadly Weapon: NA" is modified to state "Findings on Deadly Weapon = Deadly Weapon, Not a Firearm". The Court entered it's opinion stanting, "As Reformed, the Judgmet is AFFIRMED."

Appellant disagreed with the Court's Opinion and by and Through her Appellate attorney of record filed a Motion for Rehearing on May 2, 2015. On June 8, 2015, the Court of Appeals, Fifth District of Dallas, denied Appellant's, Silvia Romero, May 2, 2015 motion for rehearing. Appellant again disagrees and files this her Petition for Discretionary Review on this issue.

APPELLANT asserts there is no evidence that she intentionally or Knowingly Caused injury to her step-daughter, Mariangella Iniesta. The alternative viewing the evidence in the light most favorable to the Verdict, the most Appellant is guilty of, if any thing, is of acting recklessly in regard to the result of her Conduct. When Reviewing.

The legal sufficiency of the evidence to support a conviction, a reviewing court determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. VIRGINIA, 443 U.S. 307, 319, 99 S. CT 2781, 2789, 61 L.Ed. 560 (1979). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. 443 U.S. at 319, 99 S. CT. at 2789; and see, Clayton v. State. 235 S.W. 3d 772, 778 (Tex. Crim. App. 2007). When performing a legal-sufficiency review, the reviewing court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the, Verdict." Hooper v. State, 214 S.W. 3d 9, 16-17 (Tex. Crim. App. 2007).

Our indictment alleges Appellant intentionally or knowingly caused serious bodily injury to a child on or about September 9, 2001 by throwing and pushing or striking the child (CR:20). The lesser included offense of recklessly causing injury to a child is included in the jury charge (CR:80) However, the trial court's charge improperly instructs the jury concerning the culpable mental state of intentionally as: A person acts intentionally, or with intent, with respet to to (sic) a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." (CR:79)[3] (emphasis added). Effectively, The Trial Judge told the jury they 3 this errorneous Jury charge instruction is discussed further in this P.DR.s issue Numbers 2 and 3 but it is important to note here our Jury charge definition of "Knowingly" and recklessly "did properly Remove the penal code language of "Nature of his Conduct" and "circumstances surrounding his conduct" Repectively (CR: 79-80). See Second sentence of Tex. Pen. Code Ann. 36.03 (b) and see Tex. Pen. Code Ann 6.03 (c) (Vernon 2001). It is only the definition of "intentionally" in The Court's charge that is incorrect because it includes the phrase engage in the conduct." (CR: 79).

-18-

could find Appellant guilty Of intentionally Causing injury to a child. by only finding Appellant was intending to throw, push or strike the child. rather than intend the result. To intentionally "Engage in Conduct" here is simply not a crime Of injury to a child, because injury to a child is a result-Oriented crime, Patterson v. State, 49 S.W.3d 294, 301 (Tex. App. for worth 2001, no pet.) Penal Code Section 22-04 provides that a person Commits the first-degree Offense Of injury to a child if She intentionally or Knowingly causes Serious bodily injury to a Child, who is younger than 15 years Of age. See, Tex. PEN. Code Ann § 22.04 (a) (1), (c), (1), (E) (vernon 2001).

When the Conduct is engaged in recklessly, injury to a child is a felony Of the Second degree. TEX. PEN. Code Ann § 22.04 (e) (vernon 2001).

When Reviewing a legal-Sufficiency challenge, a Reviewing Court views The evidence in the light most favorable to the Verdict to determine whether any rational trier Of fact Could have found the essential elements Of the offense beyond a reasonable doubt. See, Saxton v. State, 804 S.W. 2d 910, 914 (Tex. Crim. App. 1991). To establish the essential elements OF the offence, the state must prove that appellant intentionally or Knowingly Caused Serious bodily injury to the child. See, Tex. PEN. Code Ann § 22.04 (a) (1), (c) (1), (e). As stated earlier, Injury to a child is an example Of a result-Oriented crime. Patterson, 49 S.W.3d at 301 (reforming Judgment from intentional or Knowingly to recklessly causing injury to a child), and See, Patterson v. State 101 S.W. 3d 150 (Tex. App. Fort worth 2003, Pet. ref'd). The culpable mental state relates not to the nature or circumstances Surrounding the Conduct, but to the result Of defendant's Conduct. 49 S.W.3d at 301. Awareness Of the Circumstances is not a mental.

State which the injury to a child statute makes Culpable-Haggins v. Satete 785 S.W. 2d 827, 828 (Tex. Crim. App.) (1990).

Of Course, no non-party trial witness observed the event subject of the alleged offense, but Appellant's statement to Dectective Flores was admitted and published to the Jury (7RR:48-52).[4] Viewing the statement in the light most favorable to the verdict, Appellant says she was "annoyed" and grabbed The child's ARm and pushed her "hARd" because the child was playing with a TV. remote Control (7RR 52-53). This admission would only Support that Appellant intentionally or knowingly engaged in the Conduct of Throwing, Pushing or Striking the child, but not that Appellant intentionally or knowingly Caused the result of Serious bodily injury.

The evidence at trial focuses on the severe injury and how it might have been inflicted, not that the result was intentional or knowing. The three doctors testifying for the state opined that the action Causing the injury Sustained by the child was not accidental, but that testimony goes to the nature of the conduct and not the result. Dr. OKada Stated, in her medical opinion, the injury was not con sistent with falling from a Couch and further that the injuries were "non-accidental trauma" and used the term "intentionally inflicted "when describing the action needed to inflict the injury presented. (6RR: 33). Again, the how-and-why of the infliction of the injury is not The point - the point is only whether the result is intentional, knowing or reckless. Interestingly, Dr. Dale Swift does opine that the child's (M.I).

[4] In a Separate hearing, Appellant Contested the voluntariness of her statement alleging She was coerced; however, the trial court found the statement to be voluntary(5RR:75). The voluntariness issue was also submitted to the Jury in the Court's charge(CP:83).

-20-

Skull fracture was large but was old and healing Dr. Swift opined that this could have compromised the child's (M.I) skull. However, testimony was never developed by Trial Counsel for Appellant nor were any medical expert's presented on her behalf. This issue will be argued in Issue 3. Further, none of the experts at the trial are asked to opine about whether the actor would intentionally and knowingly cause the result, that result being the injuries shown to Mariangella. Additionally, Dr. Swift stated "infliction" of the injuries was not accidental (7RR:22). The State asked Dr. Swift if a person using the force necessary to inflict the injury seen would "know" that force would cause massive injuries; however, the trial Judge sustained an objection as to speculation (7RR:22) Later, the state again asked Dr. Swift about the intentional act of "Pushing or throwing or slamming a kid against the floor." but the question focuses on the intention of a person to push the child, but not on the person's intention of causing the resulting injury (7RR:31) The best Dr. Swift could do was to refute the defensive theory that the injury might have been caused by the child falling off of a Rocking chair (7RR: 33) Dr. Cox agreed with the other doctors that this was a cause of "inflicted trauma" and not accidental (7RR:118-19). The doctors, in using the terms "non accidental" or "intentional," are referring to an act of throwing, pushing or stricking the child which addresses the specific affirmative action only; however, that is not sufficient evidence for a jury to find intentional or knowing causation of the result [Emphasis added]. In other words, There is no evidence in the record to show that Appellant by throwing, pushing or stricking the child, intended to cause the injury resulting.

—21—

For example, if a person were to take an action, such as using a knife, to sever a finger from an another's body, then it could be said the actor had the conscious objective or desire to cause the result, ie-to sever the finger from the hand, but under Appellant's record no such evidence of causation is found regarding the injury resulting to the child, the jury could have found that Appellant intentionally and knowingly threw, pushed or struck the child. Without finding the Appellant intentionally or knowingly caused the result-serious bodily injury. At best, the evidence shows that Appellant would have been reckless, as defined in the jury charge, with respect to her conduct when she is aware of but consciously disregards a substantial and injustifiable risk that the result would occur (CR=80). In the light most favorable to the verdict, throwing and pushing or striking are shown to be intentional but there is no evidence the injury cause was intended. On the 17th of April, 2015, the Court of Appenals incorrectly affirmed the conviction below by finding Appellant did not suffer egregious harm due to the jury charge error. By its opinion, the Court of Appeals determined that Appellant Romero did not suffer egregious harm. Slip op. at 14. The Court cites Taylor v. State, 332 S.W.3d 483 (Tex. Crim. App. 2011) for the proposition that unobjected to jury charge errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more pursuasive. Romero, slip op. at 12 (citing Taylor, 332 S.W.3d at 490). Appellant argues here that the state's case was for conviction was made more clearly and significantly more pursuasive date to the incorrect charge.

-22-

definition on intentional as applied to the offense of injury to a child, the Court did find charge error in Appellant's case because the language "engage in the conduct or" was improperly added to the definition of intentionally as applied to a result oriented offense of injury to a child. Romero, Slip op. at 13-14. As pointed out in the panel's opinion, the State argued that Appellant "intended the act" in both the state's opening and closing final argument. Romero, Slip op. 13-14. The state was able to argue the exact improper definition of intentionally that the trial Judge gave to the Jury. The ability of the state to argues such an incorrect definition gave the Jury the ability to convict Appellant for her engaging in conduct - an act, and not for her intent to cause the result of her act. Just because the jury could have restricted itself to whether Appellant intended the result of injury to a child under the application paragraph of the charge, does not help in the analysis of egregious harm. The Panel states the Appellant has not shown egregious harm, but Appellant is certainly notable to provide evidence of the jury considerations that resulted in her conviction. Romero, Slip op. at 14; andsee, Tex. R. Evid. 606(b) This is sufficient to show egregious harm in this case relying solely on the fourth criteria in Taylor making the State's case for conviction clearly and significantly more persuasive. TAYLOR, 332 S.W. 3d 490. Additionally, Trial Counsel (Jamisons Error of failing to object to the improper definition so prejudiced the Appellant because Prejudice is presumed in situations where the likelihood of counsel having provided effective assistance is extremely small such as this case where Counsel failed completely to subject the prosecution's case to "meaningful adversarial testing." United States v. Cronic, 466 U.S. 648, 658, 104 S. CT. 2039, 2046, 2047, 80 L. Ed. 2d 657 (1984). However, this is argued.

—23—

in Appellant's PDR: Issue No. 3. Aside From the improper argument of the state, the evidence introduced at trial focused on Appellant's intent to engage in an act, not the result of her act. After the Panel's Thorough review of the evidence, especially from the state's experts (trial counsel did not Present any medical expert testimony – see Issue 3), it is apparent the state sought to show the intent of Appellant to engage in Conduct, not that she intended the result of such horrendous injuries. As part of its analysis, the Panel discusses the state of the evidence to determine whether egregious harm exists. The Panel stated: "The evidence adduced at Trial showed that M.I. Suffered serious bodily injury, was only two years old at the time of her injuries, Romero and A.K., who was one year old, were the only others Present in the apartment when M.I. was injured, Romero gave inconsistent statements and implausible explanations relating to M.I.'s injuries, and Romero absconded, fleeing prosecution For nine years." Romero Slip. OP. at 13. That evidence applies specifically to whether Appellant engaged in Conduct and not necessarily that Appellant intended the result. After the Fact, Appellant certainly would have been aware of the extent of M.I's injuries, but that is not proof she intended to cause those injuries. The state's proper burden of proof may well have been difficult in this matter since there were no witnesses to the incident, however, the state's case was made much easier by the state being able to show and argue Appellant's intentionally Engaged in Conduct that caused the result as defined in charge. (Emphasis added). The state was relieved of its burden in this case to show Appellant intentionally or Knowingly Caused the result and not Just engaged in the conduct that happened To cause the injuries. The state Simply did not shoulder the proper burden of proof.

—24—

in this case under the trial court's charge and this improper burden made the State's case for conviction clearly and more significantly more persuasive. See, Taylor, 332 SW 3d at 490.

Additionally, the Court of Appeals panel in its opinion dated April 17, 2015, modified the judgment of conviction below to include a deadly weapon finding although the trial court made the finding of "N/A" regarding a deadly weapon in its judgment. Romero, Slip. Op. at 15-16. In her appeal, Appellant did not have the opportunity to specifically contest the sufficiency of the evidence in regard to a deadly weapon since it was not a part of the original Judgment and it was not a cross-point raised by the State. The Panel did not determine the legal sufficiency of the use of a deadly weapon under our Record.

In Appellant's Brief filed May 23, 2014, Appellant did submit that the evidence was insufficient to support her conviction and now specifically asserts the evidence was insufficient to support a deadly weapon finding. Since there was no evidence in our Record of use of a firearm or anything manifestly designed to inflict death or serious bodily injury to sustain a deadly weapon finding the record must "show anything that is the manner of its use or intended use is capable of causing death or serious bodily injury. See Pen. Code § 1.07(17)(B) It is improper to assume the evidence supports a deadly weapon finding without the proper standard of review analysis under the relevant case law. See, Romero, Slip Op. at 6 (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979), Merrit v. State, 368 S.W. 3d 516, 525 (Tex. Crim. App. 2012) Brooks v. State 323 S.W. 3d 893, 899 (Tex. Crim. App. 2010) (plurality op.) Appellant is not have contesting the authority of the Panel of the Court of Appeals to /modified.

-25-

its judgment as stated in its opinion. Romero, Slip OP at 16. The issue here is legal Sufficiency. Because no analysis regarding the Sufficiency of the evidence was performed by the Court of Appeals, Appellant must now be given the opportunity to both Contest the sufficiency of that evidence and require a proper review of the evidence, if any, supporting a deadly weapon finding.

The indictment does allege specific types of objects being used as a deadly weapon as pointed out by the Panel of the Court of Appeals. Romero, Panel OP at 15. Also, the application charge included the deadly weapon language. Id. at 16. However, modifying the Judgment to add a deadly weapon would be improper unless such a finding is supported by the evidence. An object to be deemed a deadly weapon must have more than a hypothetical capability of Causing death or serious bodily injury, Johnston v. State, 115 S.W. 3d 761, 764 (Tex App.- Austin 2003) aff'd, 145 S.W. 3d 215 (Tex. Crim App.-2004) A deadly weapon finding must be supported by evidence relating directly to the circumstances of the criminal episode. Id. Due to Appellant's challenge of the sufficiency of the evidence to support a deadly weapon finding Concerning Appellant's use of her hands, the floor a fireplace or an unspecified object, as alleged in the indictment, this Court, based upon the Court of Appeals denial for rehearing, should undertake the necessary analysis to determine the legal sufficiency of a deadly weapon finding.

This Court of Criminal Appeals should find the evidence insufficient as to the element of culpable mental states of intentionally or Knowingly that are required to show the commission of the first degree of injury to a child and enter an acquittal. In the alternative, if this Court finds sufficient.

— 26 —

evidence only as the mental state of recklessness, this Court should reform the judgment of conviction to find Appellant guilty only of recklessly committing the offense. Tex. R. App. Pro. 43.2; Tex. Pen. Code Ann § 22.04 (a) and (e) and see, Patterson; 46 S.W. 3d at 304. Further, this Court should examine the Court of Appeals treatment, and opinion entered April 17, 2015 regarding its (Court of Appeals) modification, of Appellant's second issue, Reverse the Judgment of Conviction and remand this case to the trial Court for a new trial.

## ISSUE NUMBER TWO

ISSUE NUMBER TWO (RESTATED): THE TRIAL COURT COMMITTED EGREGIOUS ERROR BY CHARGING THE JURY ON THE IMPROPER DEFINITION OF THE CULPABLE MENTAL STATE OF ACTING INTENTIONALLY.

As stated in this Petition under Issue Number One, injury to a child is a result oriented offense. Patterson v. State, 46 S.W. 2d 294. 301 (Tex. App. Fort worth 2001, no Pet.). Even though the trial Court incorrectly instructed the Jury on the definition of culpable mental state of "intentionally." Trial Counsel failed to object to the Court's charge or to request an instruction when asked for by the Court (8RR: 5-6) non efecctiveness of counsel discussed further in Issue 3) First, it was shown in the discussion in Issue Number One of this Petition for Discretionary Review, that the incorrect instruction in the trial Court's charge was as follows: "A person acts intentionally or with intent, with respect to to (sic) a Result of his conduct when.

— 27 —

it is his conscidus objective or desire to engage in the conduct or cause the result." (CR:79). (Emphasis added).

The correct instruction would have been: "A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result. See Texas Criminal Jury Charges §6:1440 (James Publishing, Rev-11, 12/2010).

The incorrect instruction is directly related and immediately before the application paragraph (CR:79). As stated earlier, "Engage in the conduct or" should not have been in the instruction, but by doing so, the trial court is telling the jury in the application paragraph they can find Appellant guilty by intentionally engaging in the conduct. So, in effect, the jury could have found that the Appellant did intentionally throw or push the child as alleged in the indictment without the jury finding beyond a Reasonable doubt that the Appellant intended to cause the Result. See, Haggins v. State; 785 S.W. 2d 827, 828 (Tex.Crim.App. 1990).

The facts in Hagains, similarly to Appellant's case, dealt with an injury to a child where the child received a blow to the head and the defendant there denied doing anything to the child to cause injury. Id. at 827. Appellant took the stand and testified that she did nothing to cause an injury and would not intentionally harm a child (7RR:149). The trial court erred in Haggins by overruling the objection to the charge to limit the culpable mental state to the result of the conduct, but instead the trial court quoted the full language from Texas Penal Code Section 6.03 (a) and (1), Id. In Appellant's case here, the trial court did not fully quote the Texas Penal code Section 6.03 (a) because the.

— 28—

language "[+] he nature of his conduct or "was omitted in the charge, but the trial court failed to also delete "[+]o engage in the conduct... "(CR:79.) See TEX. PEN-CODE ANN §6-03 (a) (Vernon 2001.) Interestingly, the trial court properly edited the pertinent Penal Code Sections concerning the mental states of "Knowingly" and "Recklessly" which are shown correctly in the charge (CR:79-80). See, TEX-PEN. Code ANN.§603 (b) and (c) (Vernon 2001).

Once it is determined charge error occurred, the reviewing Court must reverse if the error was egregious. Almanza v. State, 686 S.W. 2d 157, 171 (Tex-Crim.App. 1985.) (op. on Reh'g). Egregious Error is one that denies a defendant a fair and impartial trial. Id. Whether Error reaches the degree of egregiousness, is determined by a Review of the entire record. Id

The Error in Appellant's Case here is egregious because the trial Court tells the jury in its charge that the jury need not find the result was intentional, but that only the conduct was intentional. The jury could then find the Appelant guilty of simply intentionally engaging in the alleged conduct of "[+]hrowing or pushing complainant [MI] into a chair... " rather than causing the result of the head injury (CR: 79) And See, Haggins, 785 S.W. 2d at 828.

A REVIEW of the entire record shows that the state attempted to show Appellant guilty of first degree injury to a child by focusing on the extent of the injury. the experts who testified for the state could Not say Appellant intended the result of a fractured skull and other injuries but only that the conduct engaged-in was intended, the state focused in argument on Appellant's version at trial of the story of how the injuries occurred from falling from a couch or a rocking.

-29-

Chair and that such a story could not be true due to the extent of the injury, the state wanted the jury to believe that the intentional action of throwing and pushing the child as shown in Appellant's Voluntary Statement was what sealed a guilty verdict against Appellant. Appellant contested the state's version of the events leading to the injuries in her own testimony and by at least three more times in written and oral statements, the entire case focused on the <u>Extent</u> of the injury to the child and the action engaged in by Appellant - not whether the resulting injury was intended as required by the Penal code.

Again as discussed in <u>Issue No. 1</u>, jus because the jury could have restricted itself to whether Appellant intended the result of injury to a child under the application paragraph of the charge, does not help in the analysis of egregious. harm, but Appellant is certainly not able to provide evidence of the jury considerations tha resulted in her conviction. <u>Romero</u>, Slip. OP. at 14; and see, TEX. R. E VID. 606 (b). It is sufficient to show egregious harmin this case relying solely on the Fourth criteria in <u>Taylor</u> making the state's Case for conviction clearly and significantly more persuasive. <u>Taylor</u> 332 S.W. 3d 490. Aside from the impoper argument of the state, the evidence introduced at trial focused on Appellant's intent to engage in am act, not the result of her act. Again the Appeal court Panel did find charge error in Appellant's case because the language" engage in the conduct or" was improperly.

5 From the mistaken double Phrase "[+]o To..." found within the second and third lines of page two of the charge. we cansee that the trial court simply deleted [+]he Nature of his conduct or..." between the two to's but failed to eliminate "[e] ngage in the conductor..." found on the fourth line of the same page.

—30—

added to the definition of intentionally as applied to a result oriented offense of injury to a child. Romero, Slip op. at 13-14. As pointed out in the Panel's opinion, the state argued that Appellant "intended the act" in both the state's opening and closing final argument. Romero, Slip op. 13-14. As discussed in Issue Number One the state was able to argue the exact improper definition of intentionally that the trial judge gave to the Jury. The ability of the state to argue such an incorrect definition gave the Jury the ability to convict Appellant for her engaging in conduct an act, and not for her intent to cause the result of her act.

Aside from the improper argument of the state, the evidence introduced at trial focused on Appellant's intent to engage in an act, not the result of her act. The Court of Appeals review of the evidence, especially from the state's experts is made more apparent the state sought to show the intent of Appellant to engage in the conduct, not that she intended the result of such horrendous injuries. The Court of Appeals stated that "the evidence adduced at trial showed that M.I. suffered serious bodily injury, was only two year old at the time of her injuries." Further they stated Romero and her daughter A.K. who was one year old, were the only ones in the apartment when M.I. was injured, that Romero gave inconsistent statements and implausible explanations relating to M.I.'s injuri and "Romero absconded, fleeing Prosecution for nine years." Romero, Slip op. at 13. Again, that evidence applies specifically to whether Appellant engaged in conduct and not necessarily that Appellant intended the result.

After the fact, Appellant certainly would have been aware of the extent of M.I.'s injuries, but that is not proof she intended to cause those injuries.

To reiterate from discussion in Issue Number Two—the State's burden of proof may well have been difficult in this matter since there were no witnesses to the incident, however, the State's case was made much easier by the State being able to show and argue Appellant's intentionally engaged in conduct that caused the result as defined in the charge. (Emphasis added). The State was relieved of its burden in this case to show Appellant intentionally or knowingly caused the result and not just engaged in the conduct that happened to cause the injuries. The State simply did not shoulder the proper burden of proof in this case under the trial court's charge and this improper burden made the State's case for conviction clearly and more significantly more persuasive. See, Taylor, 332 S.W.3d at 490.

In the Court of Appeals opinion they state." Article 36.19 of the Texas Code of Criminal Procedure establishes the standard for reversal on appeal when the requirements of article 36-14, which relates to the charge of the Court, have been disregarded: the Judgment shall not be reversed unless the error appearing from the Record was calculated to injure the rights of (the) defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." Tex Code Crim. Proc. Ann. Art. 36. 19 (west 2006)." Under Ngo, when the defendant fails to object or states that he has no objection to the jury charge, an appellate court will not reverse.

-32-

for jury charge Error unless the record shows "egregious Harm" to the defendant. Ngo v. State, 175 S.W. 3d 738, 743-44 (Tex. Crim. App. 2005). Certainly, as discussed, Appellant is not able to provide Evidence of the Jury Considerations that resulted in her Conviction. However, in her case, even the Court of Appeals Panel agreed and found Error in Appellant's Case because the language "engaged in the Conduct or" was improperly added to the definition of intentionally as applied to a result oriented Offense of Injury to a child. Romero, Slip Op. at 13-14. This error alone is sufficient to show egregious harm Relying solely on the Fourth Criteria in Taylor making the State's case for conviction clearly and significantly more persuasive Taylor, 332 S.W. 3d 490. However. in Appellant's Case, Article 36.19 of the Texas Code of Criminal Procedure, States: "the Judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of [the] defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006) While Appellant is unable to provide evidence of the Jury deliberations, the record indicates by the argument by state both that opening and closing, the blatant lack of defense Counsel's objections to the incorrect arguments of state and then the Jury Charge, the failure of defense to timely file, for the expert's expenses, failure to have deposed any experts, failure to bring any witnesses or conduct any type of investigation or file any expert this report clear on our record (which will be discussed further in Issue Three herein) that the defendant did not have "a fair and impartial trial." The Court Of Appeals states in their opinion: "Egregious harm. —33—

is a difficult standard to prove and such determination must be done on a case-by-case basis. Taylor v. State, 332 S.W. 3d 483, 489 (Tex. Crim. App. 2011); Hutch v. State. 922 S.W. 2d 166, 171 (Tex. Crim. App. 1996). The actual degree of harm must be assayed in light of. (1) the entire Jury charge; (2) the state of evidence; (3) the argument of Counsel, and (4) any other relevant information revealed by the record of the trial as a whole. Allen v. State, 253 S.W. 3d 260, 264 (Tex. Crim 2008), Almanza, 686 S.W. 2d at 171. Errors which result in egregious harm are those that affect the very basis of the case, depride the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and more significantly more persuasive. Eg. Taylor. 332 Sw. 3d at 490"

The Appellant has met all the Criteria in Allen and Almanza: 1) the Jury charge, (2) the state of the evidence, (3) the argument of Counsel; and (4) any other relevant information revealed by the record of the trial as a whole. These issues have been discussed throughout and Appellant Reiterates them here as if fully set out. the record as a whole will be further discussed in Issue Number Four. Additionally Appellant has shown egregious harm in this case relying solely on the fourth criteria in Taylor. making the state's case for conviction clearly and significantly more persuasive. Finally, Counsel's Conduct so Compromised the proper functioning of the adversarial process that the trial cannot be said to have produced a reliable result. Thompson v. State, 9 S.W. 3d 808, 812-13 (Tex. Crim. App. 1999) (citing Mc. Forland v. State, 845 S.W. 2d 824. 843 (Tex. Crim. App. 1992). Appellant will discuss counsel's ineffective assistance in Issue Number. However. Appellant relies on the entire Record to.

-34-

show how all criteria has been established citing _Allen_, _Almanza Ngo_ and _Taylor_.

Because of the egregious Error of giving an incorrect instruction regarding the element of the culpable mental state necessary to convict Appellant of the first degree Offense of causing Serious bodily injury to a child, this Court should reverse the Conviction and remand the case to the trial Court for a new trial.

## Issue Number Three

Issue Number Three (Restated): Appellant Did NOT Receive Effective Assistance of Counsel Prior To Trial, at Pre-Hearings on motions; and, AT TRIAL:

1) Failure To Conduct Pre-Trial Investigations and by meeting with APPELLANT only two (2) times in two years and not allowing or bringing an Interpreter;

2) Failure to Conduct Pre-Trial Discovery Depositions of APPE-LLEE's medical, Radiological and neurological experts;

3) Failure To Conduct Pre-trial Discovery Depositions of Court Appointed medical Experts and then failing to Present medical Expert At Trial;

4) Failure To object to Jury charge Instruction with Regard to the improper Definition of Culpable Mental State of Acting Intentionally, even when asked by the Court;

5) Failure to Conduct any Pre-Trial Depositions and/or Interviews of witness

6) Failure to Investigate and/or depose any Current medical

—35—

physicians Currently treating Complainant child (M.I).

7) Failure to object to hear-say testimony relevant to Complainant's Current medical condition;

8) Failure to object to State's argument;

9) Failure to subject prosecution's Case to "meaningful adversarial testing".

10) Mis advice given to Appellant to turn down Plea of 10 years by promising Appellant that defense's medical expert would be presented and that she would not have to spend 10 years in prison.

The right to the assistance of Counsel is guaranteed by the sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Texas Constitution This right to assistance of Counsel has long been understood to include a "right to the effective assistance of counsel." See McMann v. Richardson, 397, U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449. 25 L.Ed.2d 763 (1970). The integrity of our Criminal Justice system and the fairness of the adversary criminal process is assured only if an accused is represented by an effective attorney. See United States v. Morrison, 449 U.S. 361, 364, 101. S.CT. 665, 667, 66 L.Ed.2d 564 (1981). Absent the effective assistance of counsel "a serious risk of injustice infects the trial itself." Cuyler v. Sullivan, 446 U.S 335, 343, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980). Thus, a defendant is Constitutionally entitled to have effective counsel acting in the role of an advocate. See, Anders v. California, 386 U.S. 738, 743, 87 S.CT. 1396, 1399, 18 L.Ed 2d 493 (1967).

The United States Supreme Court in Strictland v. Washington,

466 U.S. 668, 104 S.CT. 2052, 80 L.Ed 674(1984) established the federal standard for determining whether an attorney rendered reasonably effective assistance of Counsel. The Texas Court of criminal Appeals in Hernandez v. State, 726 S.W. 2d 53, 57 (Tex.Crim.App. 1986). adopted the Strickland test as the proper test under state law to gauge the effectiveness of counsel. Pursuant to that test"...the defendant must show that Counsel's performance was deficient. This requires showing that Counsel's made Errors so serious that Counsel was not Functioning as the"Counsel." guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient Performance Prejudiced the defense. This requires Showing that Counsel's Errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687. 104 S.CT. at 2064. The purpose of the Strickland two part test is to Judge whether Counsel's Conduct so compromised the proper functioning of the adversarial process that the trial Cannot be said to have Produced a reliable result. Thompson v. State, 9 S.W. 3d 808, 812- 813 (Tex. Crim. App. 1999)(citing McFarland v. State. 845 SW.2d 824, 843 (Tex.Crim.App.1992).

There are some Errors that "are so likely to Prejudice the accused that the Cost of litigating their effect in a particular Case is unjustified" thus making it Unnecessary to establish the Prejudice Prong of Strickland. United States v. Cronic, 466 U.S. 648, 658, 104 S.CT. 2039 2046, 80 L.Ed.2d 657(1984) Prejudice is Presumed in Situations where the likelihood of Counsel having Provided effective assistance is extremely small such as where Counsel Failed completely to subject the.

-37-

Prosecution's Case to "meaningful adversarial testing. Id. at 660-104. S.CT. at 2047.

In order for the presumption of prejudice to apply the attorney must completely fail to challenge the prosecution's entire case, not just elements of it, Haynes v. Cain. 298 F-3d 375 380, 382 (5th Cir. 2002) en banc; also see Bell v. Cone 533 U.S. 685, 122 S.CT. 1843, 1851. 152 L-Ed- 914 (2002) (noting that difference between situations addressed by Strickland and Cronic is not of degree but of kind.") Appellant's counsel failed to challenge the prosecution's entire case, not just elements of it. In trial counsel's own words in our record: Obviously, I've been on this case a long time and considering the medical records and the need for expert review and the fact that I've had contact with three different experts on your behalf and with their schedules some of them needed as much as an eight-month old vance window should they be called to testify, This case has been going on a long time" R-R. 135 Vol. 7 our records reflect Trial Counsel failed to present any expert testimony to the Jury the record reflects that on the day of trial, Trial Counsel presented a motion for travel expenses for the expert. As trial counsel said himself some experts require as much as an eight month window. Trial Counsel did not file a Report by affidavit of medical expert did not attempt to ask for a deposition of said expert, in total Appellant was misadvised to reject the plea on the advice that Trial counsel gave her that he had a good.

medical expert lined up. Attorney's failure to present qualified Medical testimony in support of defendant's only viable defense when combined with other trial errors undermines confidence in outcome of trial and amounts to ineffective assistance. Bylander v. State, 75 S.W. 3d 119 (Tex. App.-San Antonio 2002, Pet. granted).

FURTHER, Trial counsel failed to object to the improper definition of intentionally given to the Jury, even after the Judge asked trial court if he had any objections or instructions for him (Judge) to consider. The Court of Appeals did find charge error in Appellant's case because the language "engage in the conduct or" was improperly added to the definition of intentionally as applied to a result oriented offense of injury to a child. Romero, Slip-op. at 13-14. However The damage was set and no objection was lodged and as pointed out in the Court of Appeals opinion, the state argued that APPELLANT "intended the act" in both the state's opening and closing final argument. Romero, Slip-op. 13.

TRIAL Counsel's failure to conduct any meaningful Pre-Trial investigation Resulted in his inability to CROSS-examine the state's witnesses. Appellant's sister-in-law was allowed to give medical testimony without being challenged by Trial Counsel. No attempt was made to contact any current treating Physician's on Complainant's M.I. current status. A lay witness was allowed to give testimony Regarding her current status without being-

Questioned as to the last time she had seen the Complainant M.I, who resides in México. Complainant M.I. was not a legal citizen and there fore after treatment and rehabilitation in the United States was sent back to join her father who was also not a legal citizen.

Appellant's record in its entirety speaks for itself. The absence of Trial Court's Counsel effective assistance and its injustice infected the trial itself. The review of the totality of the Representation and the particular Circumstances of this Case Required that Trial Counsel subject the Prosecution's Case to "meaning ful adversarial testing. The record as a whole indicates that trial Counsel's Performance Failed in every element. Appellant's claim is supported by the record which contains direct evidence as to why Counsel took the actions or made the ommissions relied upon as the basis of her issues. It is inconceivable that defense Counsel could have had a Reason for failing to object to Certain hear say that would fall within the Range of Objectively reasonable trial strategy. It should be kept in mind, however, that simply labeling aun attorney's actions "Trial strategy" does not insulate the attorney from a finding of ineffective assistance of Counsel. An attorney's strategy can be so ill-Chosen as to render a trial fundamentally unfair, See, United States v. Rusmisal, 716 F.2d 301, 310 (5th Cir. 1983) the same Can be so ill-chosen as to render a trial fundamentally unfair. See, United States v. Rusmisal, 716 F.2d 301, 310 (5th Cir. 1983) the same can be said of Trial Counsel's Failure to Conduct discovery, depositions medical expert reports, advising Appellant to reject the plea offered by the state because.

— 40 —

He was bringing in his medical expert,

As Justice Sother land explained in <u>Powell v. Alabama</u>, 287 U.S. 45, 53 SCT. 55, 77 L.Ed 158 (1932):

The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by cousel. Even the intelligent and educated layman has small and some times no skill in the science of law. If charged with a crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is un familiar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or other wise inadmissible. He lacks both the skill and knowldge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing

— 41 —

for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense. Id. at 68-69, 53 S.CT. at 63-64.

The right to the assistance of counsel is guaranteed by the sixth and Fourteenth Amendments to the United States Constitution and Article, Section 10 of the Texas Constitution. This right to the assistance of counsel has long been understood to include a "right to the effective assistance of counsel." See McMahan v. Richardson, 397 U.S. 759, 771, n. 14, 90 S.CT. 1441, 1449, 25 L. Ed. 2d 763 (1970).

Appellant as is seen by our record and the opinion of the Court of Appeals did not Reccive effective assistance of counsel.

Because of the ineffective assistance of counsel, this Court should reverse the judgment of conviction and an acquittal entered.

## PRAYER

Wherefore, Premises Considered, Appellant respectfully prays that:

1) The judgment of conviction be reversed and an acquittal entered; or

2) The Judgment of conviction be reversed and an acquittal entered because the legal insufficiency of the evidence or.

-42-

3) In the alternative, the Judgment of Conviction be reformed for Conviction only of the lesser included Offense of recklessly Causing serious bodily injury to a child because the evidence is sufficient only as to reckless mental state and remand this case for a New punishment hearing; Or

4) In the alternative, the Judgment of Conviction be reformed for Conviction because of ineffective assistance of Counsel and remand this Case for a new Punishment hearing and a remedy to neutralize the taint of the actual Constitutional violation and ORDER The state to reoffer the plea agreement, Or.

5) The Conviction be reversed because of Jury charge Error and the egregious harm inflicted and the case be remanded to the trial Court for a New trial.

Respect fully Submitted,
Silvia Romero
Silvia Romero, Prose Appellant
TDCJ # 01883677
Lane Murray Unit
1916 N. Hwy 36 Bypass
Gatesville, Texas 76596.

-43-

## Certificate Of Service

    This is to certify that on September 4th a true and correct copy of the above and foregoing Appellant's Petition For Discretionary Review was forwarded for filing to: Abel Acosta, Clerk, Court Of Criminal Appeals Of Texas, P.O. Box 12308, Capitol Station, Austin, Texas 78711, by depositing same in the U.S. mailbox located outside the dining hall Of the Lane Murray Unit, and a copy Of Appellant's petition For Discretionary Review was forwarded to Craig Watkins, Esq. Criminal District Attorney, Attn: Appellate Div, 133 N. River Front, LB 19, Dallas, Texas 75207.

Silvia Romero, Prose

Silvia Romero

—44—

Affirmed as Modified and Opinion Filed April 17, 2015.



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

No. 05-13-01586-CR

SYLVIA ROMERO, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6
Dallas County, Texas
Trial Court Cause No. F-01-16575-X

# OPINION

Before Justices Lang and Brown[1]
Opinion by Justice Lang

Sylvia Romero appeals the trial court's judgment convicting her of injury to a child. The jury found Romero guilty and assessed her punishment at life imprisonment and a $10,000 fine. Romero raises two issues on appeal arguing: (1) the evidence is legally insufficient to support her conviction; and (2) she suffered egregious harm when the trial court included an instruction in the jury charge that authorized the jury to convict her of injury to a child under an incorrect definition of the culpable mental state. The State raises one issue on cross-appeal arguing the judgment should be modified to reflect the correct statute for the offense.

We conclude the evidence is sufficient to support Romero's conviction. Also, we conclude that, even though the trial court included an instruction in the jury charge that

---

[1] The Hon. Kerry P. FitzGerald was on the panel and participated at the submission of this case. Due to his retirement from this Court on December 31, 2014, he did not participate in the issuance of this opinion. *See* TEX. R. APP. P. 41.1 (a), (b).

authorized the jury to convict Romero of injury to a child if they found that she intentionally "engage[d] in the conduct," Romero has not shown that she suffered egregious harm. Further, we conclude the judgment lists an incorrect statute for the offense and fails to list that Romero used a deadly weapon, and modify the judgment accordingly. The trial court's judgment is affirmed as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

M.I. was born in Mexico and her mother abandoned her approximately three months after she was born. Afterward, M.I.'s father, Silvio Iniesta, relocated to the United States where he met and married Romero. Iniesta and Romero also had a child together, A.K. The children were approximately one year apart in age. Iniesta worked as a long-haul truck driver and was away from home most of the time while Romero cared for the children.

Alexamari Villareal, Iniesto's sister, visited Romero "at least two times a week." Villareal observed that Romero did not treat the children equally. Villareal believed Romero showed a preference for A.K., and was stricter with and yelled at M.I. Although Villareal did not see Romero physically abuse M.I., she did see Romero treat M.I. roughly. Villareal saw M.I. cry a lot, observed that M.I. was unhappy and sad, and knew that M.I.'s arm was always in pain.

On May 18, 2001, M.I. was taken to the emergency room. Medical imaging revealed an uncommon fracture of M.I.'s humerus bone at the shoulder joint. Also, the imaging revealed that the fracture was several weeks old based on the degree of healing.

On September 9, 2001, Villareal picked her daughter up from Romero's apartment. M.I., who was two years old at the time, grabbed her shoes and wanted to leave with Villareal. Villareal told Romero to tell M.I. "to get ready and go to [Villareal's] house," but Romero said, "No." M.I. started crying. Approximately fifteen minutes after Villareal left Romero's

-2-

apartment, she received a "missed call" from Romero. Later, when Villareal saw the missed call, she tried to return Romero's call, but there was no answer.

Meanwhile, on September 9, 2001, Romero called 9-1-1, reporting to the dispatcher that M.I. had fallen off of a couch while jumping and hit her head. When the emergency medical technicians (EMTs) arrived at Romero's apartment, they saw Romero and A.K., and found M.I. lying on the dining room floor carpet. M.I. was unresponsive, had a "blown pupil," and her body was posturing, which is an abnormal motor function. These signs were indicative of a brain injury, so the EMTs immediately took M.I. in the ambulance to the hospital where a medical team was waiting for her.

Pamela Okada, M.D., was waiting for M.I. when she arrived at the hospital and was the first emergency room physician to examine her. Dr. Okada was informed that M.I. had fallen off the couch on either the carpet or "a chimney" and the step-mother had stated she was not in the room when it happened. Dr. Okada found that M.I. was nonresponsive, i.e., she had no eye movement and did not open her eyes spontaneously, and she made no verbal response, spoke no words, and did not cry. She also found that M.I.'s arms were posturing, which is a serious abnormal motor function that shows the body is unable to follow commands. In addition, Dr. Okada found that M.I. had a "blown pupil" or a pupil that is dilated large, which is indicative of brain swelling or something pushing on the brain. Dr. Okada ordered CAT Scans and blood tests. The imaging revealed a large skull fracture and subdural hematoma, a serious brain injury, and that her pancreas was lacerated or torn into two pieces. As a result, M.I. was intubated, i.e., a breathing tube was put into M.I.'s lungs, and provided oxygen.

Dale Swift, M.D., a pediatric neurosurgeon, operated on M.I. Dr. Swift found fresh subdural and epidural hematomas and one long segmented skull fracture that appeared to be a couple of weeks old based on the degree of healing. To alleviate the bleeding and swelling, Dr.

–3–

Swift performed a craniotomy, cutting open M.I.'s scalp, drilling a hole in her skull, and removing a large window of bone. Then, M.I. was placed in a pentobarbital coma.

At the hospital, Romero told JoAnne Marchant of Child Protective Services (CPS) that she was in the bathroom when she heard a child scream, "Mamma," and the sound of a fall. Romero stated that she believed A.K. had fallen, but instead found M.I. lying on her back by the fireplace and unconscious. Romero stated that M.I. was in the habit of playing on and jumping from the rocking chair to the fireplace and she believed the rocking chair had fallen over. Also, Romero explained that M.I. broke her arm when she fell off of the bed while playing with a cousin who had wrapped M.I. in a bed sheet. Romero and Marchant drew a diagram of the scene and Romero provided a handwritten affidavit in Spanish, which was translated into English as follows:

> Silvia Romero affirms that [M.I.] was playing with her daughter and was in the bathroom when I suddenly heard a scream. I thought that the child [A.K.] had fallen, but it wasn't so.
>
> I found [M.I.] tossed in the middle of the chimney. I picked her up and wet her head with water. And she wasn't breathing very well but her aunt [Villareal] had just left and I called [Villareal] on her cellular and she didn't answer.
>
> Then[,] I dialed 911 and then they tended to the child and they asked me where she had fallen from and I told them from the couch. That is, the rocking chair. I wasn't asked anything else, nothing else, and I am at the clinic.

That night, CPS removed A.K. from Romero's home. Then, CPS proceeded to terminate Romero's parental rights to A.K. After M.I. was released from the hospital, she went through a series of foster homes for approximately a year before she returned to Mexico.

On September 13, 2001, during an interview with the Carrollton police, Romero made a second, voluntary statement to Detectives Vick Humphrey and Jose Flores. The statement was provided in Spanish and was translated into English as follows:

-4-

This Sunday [I] was in my apartment with my daughters, [M.I.], [A.K.,] and [Villareal's daughter]. Around 4:00 p.m., my sister-in-law came to my apartment too.

So then we ate and stayed for about five minutes and [Villareal] took [Villareal's daughter]. My daughters and I were watching television. My daughter was playing with the control.

So then I told her, "Calm down, because if you don't, I'm going to spank you." And she wouldn't calm down.

I got really annoyed and grabbed my girl's arm and I pushed her hard on the chair and the chair went backwards and she hit her head on the floor.

She did not react and I took her to the bathroom and I wet her head and she didn't react and I gave her moth-to-mouth resuscitation and nothing.

And then I called 911. That was when they came and tended to her and I went with them. I am sorry about what happened. I am torn because this was an accident and I am so regretful and it hurt me a lot.

Romero was arrested in September 2001, indicted for the offense of injury to a child, and released on bond in March 2002. After being released on bond, Romero fled to Mexico. The case was called for trial on December 9, 2002, but Romero failed to appear and answer. On December 11, 2002, Dallas County Criminal District Court No. 4 signed a judgment nisi against Romero. Romero lived in Mexico for approximately three years before moving to North Carolina with her siblings. Romero was re-arrested in September 2011.

In September 2013, Romero was tried before a jury. During the trial, Villareal testified that at the time of trial, M.I. was fifteen years old and living in Mexico with Iniesta. Villareal also stated that M.I. is unable to talk or feed herself, walks with difficulty, can move only one hand and one eye, and wears a diaper. Dr. Okada, Dr. Swift, and Mathew Cox, M.D., a pediatrician who reviewed M.I.'s medical files, provided medical testimony regarding the nature and extent of M.I.'s injuries during the trial. Romero testified in her own defense and denied harming M.I., stating that she was not in the room at the time of M.I.'s injury and did not know

how M.I.'s injuries occurred. The jury found Romero guilty of injury to child. After a hearing on punishment, the jury assessed Romero's punishment at life imprisonment and a $10,000 fine.

## II. SUFFICIENCY OF THE EVIDENCE

In issue one, Romero argues the evidence is insufficient to support her conviction. Romero contends there is no evidence she intended to cause the injuries resulting from her actions. In the alternative, she argues the evidence shows only that she was guilty of the lesser included offense of recklessly causing the injury. The State responds that the overwhelming evidence allowed a rational jury to find Romero guilty of intentionally or knowingly causing serious bodily injury to a child.

### A. Standard of Review

When reviewing the sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.). Appellate courts are required to determine whether any rational juror could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 902 n.19. An appellate court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Merritt*, 368 S.W.3d at 525; *Brooks*, 323 S.W.3d at 899. All evidence, whether properly or improperly admitted, will be considered when reviewing the sufficiency of the evidence. *See McDaniel v. Brown*, 558 U.S. 120 (2010) (per curiam); *Lockhart v. Nelson*, 488 U.S. 33, 41–42 (1988); *Jackson*, 443 U.S. at 319.

## B. Applicable Law

Section 22.04(a)(1) of the Texas Penal Code states that "[a] person commits [the offense of injury to a child] if he intentionally, knowingly, recklessly, or with criminal negligence, by act . . . causes to a child . . . serious bodily injury." TEX. PENAL CODE ANN. § 22.04(a)(1) (West Supp. 2014). A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. TEX. PENAL CODE ANN. § 6.03(a) (West 2011). A person acts knowingly with respect to a result of his conduct when he is aware his conduct is reasonably likely to cause the result. TEX. PENAL CODE ANN. § 6.03(b).

The culpable mental state is generally proven by circumstantial evidence. *Lopez v. State*, 630 S.W.2d 936, 942 (Tex. Crim. App. [Panel Op.] 1982); *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978). To determine culpability for an offense, a jury is entitled to consider events before, during, and after the commission of the offense. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *Barron v. State*, 566 S.W.2d 929, 931 (Tex. Crim. App. [Panel Op.] 1982). Proof of a culpable mental state may be inferred from any facts tending to prove its existence, including the acts, words, and conduct of the accused. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). It may also be inferred from the extent of the injuries, and the relative size and strength of the parties. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) (citing *Lindsey v. State*, 501 S.W.2d 647, 648 (Tex. Crim. App. 1973)). Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations are probative of wrongful conduct and also circumstances of guilt. *Guevara*, 152 S.W.3d at 50. Also, Texas law has long recognized that evidence of a defendant's flight or escape is a circumstance from which an inference of guilt may be drawn. *See e.g., Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994); *Burks v. State*, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994); *Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989); *Cantrell v.*

*State*, 731 S.W.2d 84, 92 (Tex. Crim. App. 1987); *Rumbaugh v. State*, 629 S.W.2d 747, 752 (Tex. Crim. App. 1982); *McWherter v. State*, 607 S.W.2d 531, 535 (Tex. Crim. App. 1980).

### C. Application of the Law to the Facts

The record shows that M.I. suffered serious bodily injury. The EMTs and Dr. Okada found that M.I. was nonresponsive, posturing, and had a "blown pupil." Medical imaging revealed that M.I. had a large skull fracture and subdural hematoma, and her pancreas was lacerated or torn into two pieces. Dr. Swift performed a craniotomy and found that M.I. had fresh subdural and epidural hematomas and one long segmented skull fracture that appeared to be a couple of weeks old based on the degree of healing. As a result of her injuries, M.I. had to be placed in a pentobarbital coma. Further, Villareal testified that, at the time of trial, M.I. was fifteen years old, and as a result of her injuries, M.I. remains unable to talk or feed herself, walks with difficulty, is unable to move one hand and one eye, and wears a diaper. The jury could infer that Romero intentionally or knowingly injured M.I. from the extent of M.I.'s injuries. *See Patrick*, 906 S.W.2d at 487 (culpable mental state can be inferred from extent of injuries).

The record shows Villareal left Romero's apartment approximately fifteen minutes before M.I. was injured. As a result, Romero and A.K. were the only persons present in the apartment at the time M.I. was injured. M.I. was two years old and A.K. was one year old. The evidence of M.I.'s age and size compared with that of Romero, who the jury was able to see in court, is a circumstance from which the jury could infer that Romero intentionally or knowingly injured M.I. *See Patrick*, 906 S.W.2d at 487 (culpable mental state can be inferred from relative size and strength of parties).

When asked about M.I.'s injuries, Romero gave inconsistent statements. First, she told the 9-1-1 dispatcher that M.I. had fallen off of a couch while jumping and hit her head. Then, she told CPS that while she was in the bathroom, she heard a child scream and found M.I. lying

on her back by the fireplace and unconscious. Romero stated that she believed while M.I. was playing on and jumping from the rocking chair to the fireplace, the rocking chair had fallen over. Next, Romero gave police a voluntary written statement admitting that she pushed M.I. At trial, Romero claimed that she was not in the room when M.I. was injured.

In addition, Dr. Okada and Dr. Swift, the treating physicians, and Dr. Cox, the medical expert at trial, testified that in their opinions M.I.'s injuries were not consistent with Romero's explanation and were the result of non-accidental trauma. Dr. Swift testified that, in his opinion, based on the types of injuries sustained a person would have known that they were going to cause bodily injury to the child. Dr. Cox testified that his review of M.I.'s medical file showed there has been more than one episode of trauma to M.I., which are not explained by the history that was provided by Romero, indicating that her injuries were inflicted and the result of child abuse. Also, Dr. Cox stated that "based on the type of injuries, it would be obvious to the person there that what happened would be injurious." Dr. Cox stated that M.I.'s injuries required "high force." Romero's inconsistent statements to the 9-1-1 dispatcher, CPS workers, and the police, and implausible explanations for M.I.'s injuries are circumstances from which the jury could infer Romero's consciousness of guilt. *See Guevara*, 152 S.W.3d at 50 (inconsistent statements and implausible explanations are circumstances of guilt).

Romero was arrested in September 2001, indicted for the offense of injury to a child, and released on bond in March 2002. Romero testified that, although she does not speak English and the judge did not speak Spanish, she understood the trial judge to say, during her March 26, 2002 hearing, that she could just go home and never had to return to court. After that hearing, Villareal picked Romero up from the jail and Romero stayed with her for approximately four months. Then, Romero stated that she went to Mexico because her husband's father died, her husband was supporting her, she did not work, and she was pregnant. However, Villareal

–9–

testified that, when Romero left Villareal's home for Mexico, Villareal asked Romero "how she gets free from jail," and Romero told her "she got a call and the Judge tell her just go home." Romero stated she lived in Mexico for three years before moving to North Carolina with her siblings. Romero was re-arrested nine years later in September 2011. The evidence of Romero's flight from prosecution is a circumstance from which the jury could infer Romero's consciousness of guilt. *See e.g., Bigby*, 892 S.W.2d at 883; *Burks*, 876 S.W.2d at 903; *Cantrell*, 731 S.W.2d at 92; *Foster*, 779 S.W.2d at 859; *Rumbaugh*, 629 S.W.2d at 752; *McWherter*, 607 S.W.2d at 535.

Reviewing all of the evidence in the light most favorable to the jury's verdict, we conclude a rational jury could have found that Romero intentionally or knowingly caused injury to M.I., a child. *See Jackson*, 443 U.S. at 318–19; *Brooks*, 323 S.W.3d at 899. Issue one is decided against Romero.

### III. JURY CHARGE ERROR

In issue two, Romero argues that she suffered egregious harm when the trial court included an instruction in the jury charge that authorized the jury to convict her of injury to a child if they found that she "intentionally" engaged in the conduct. She claims that the trial court incorrectly defined "intentionally" and that error was egregious because the jury could have found her guilty of intentionally engaging in the alleged conduct based upon that incorrect definition. Romero concedes that the portion of the jury charge containing the definitions of knowingly and recklessly were correct. Finally, Romero acknowledges that no objection was raised at trial respecting the definition of "intentionally."

The State "agrees [] that the definition of 'intentionally' should not have included the phrase 'engage in the conduct or.'" However, the State argues that Romero did not suffer egregious harm because the application paragraphs show the trial court correctly limited the

culpable mental states to the result of Romero's conduct. Also, the State contends that the jury returned a general verdict of guilty of "intentionally or knowingly causing serious bodily injury as charged in the indictment," so the jury could have found that Romero knowingly caused bodily injury to M.I.

## A. Egregious Harm

Article 36.19 of the Texas Code of Criminal Procedure establishes the standard for reversal on appeal when the requirements of article 36.14, which relates to the charge of the court, have been disregarded: "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of [the] defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." TEX. CODE CRIM. PROC. ANN. art. art. 36.19 (West 2006). Under *Almanza*, jury charge error requires reversal of the judgment when the defendant has properly objected to the charge and the appellate court finds "some harm" to his rights. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). When the defendant fails to object or states that he has no objection to the jury charge, an appellate court will not reverse for jury charge error unless the record shows "egregious harm" to the defendant. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005).

Egregious harm is a difficult standard to prove and such a determination must be done on a case-by-case basis. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). The actual degree of harm must be assayed in light of: (1) the entire jury charge; (2) the state of the evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Almanza*, 686 S.W.2d at 171. Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of

a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive. *E.g., Taylor*, 332 S.W.3d at 490.

### B. Application of the Law to the Facts

First, we examine the entire jury charge. *See Allen*, 253 S.W.3d at 264; *Almanza*, 686 S.W.2d at 171. Section 22.04(a)(1) of the Texas Penal Code states that "[a] person commits [the offense of injury to a child] if he intentionally, knowingly, recklessly, or with criminal negligence, by act . . . causes to a child . . . serious bodily injury." TEX. PENAL CODE ANN. § 22.04(a)(1). The definition portion of the jury charge states,

> A person acts intentionally, or with intent, with respect to [] a result of his conduct when it is his conscious objective or desire to **engage in the conduct or cause the result.**
>
> A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

(Emphasis added). The application paragraphs of the jury charge state:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 9th day of September, 2001, in Dallas County, Texas, the defendant, Silvia Romero, did then and there knowingly or intentionally cause serious bodily injury to [M.I.], a child fourteen years of age or younger, hereinafter called complainant, by throwing or pushing complainant into a chair with her hands, a deadly weapon, or causing complainant to strike the floor, a deadly weapon, or a fireplace, a deadly weapon, or an object, a deadly weapon, the exact nature and description of which is unknown to the Grand Jurors, and unknowable to the Grand Jurors;
>
> Or if you find from the evidence beyond a reasonable doubt that the defendant did unlawfully then and there knowingly cause serious bodily injury to [M.I.], a child fourteen years of age or younger, hereinafter called complainant, by striking the complainant against a floor, a deadly weapon, or by striking complainant against a fireplace hearth, a deadly weapon, or by striking complainant with and against an object, a deadly weapon, the exact nature and description of which is unknown to the Grand Jurors, and unknowable to the Grand Jurors, then you will find the defendant guilty of knowingly or intentionally causing serious bodily injury to a child as charged in the indictment.

The definition and application portions of the jury charge also included the lesser included offense of recklessly causing injury to a child. Neither the State nor Romero objected to the trial court's charge.

The application portion of the trial court's jury charge alleged three theories by which the jury could have found Romero guilty. Although the portion of the jury charge defining "intentionally" includes the phrase "engage in the conduct or," the application paragraph limited the offense to "intentionally cause serious bodily injury."

Second, we review the state of the evidence. *See Allen*, 253 S.W.3d at 264; *Almanza*, 686 S.W.2d at 171. The evidence adduced at trial showed that M.I. suffered serious bodily injury, was only two years old at the time of her injuries, Romero and A.K., who was one year old, were the only others present in the apartment when M.I. was injured, Romero gave inconsistent statements and implausible explanations relating to M.I.'s injuries, and Romero absconded, fleeing prosecution for nine years.

Third, we review the argument of counsel. *See Allen*, 253 S.W.3d at 264; *Almanza*, 686 S.W.2d at 171. In the first part of the State's closing argument, the State argued

> What we know beyond all doubt from what you heard from the evidence is that this was an intentional act. Every doctor who treated this baby told you this was an intentional act. . . .
>
> This was an intentional act. . . .
>
> I told you that you could look at everything to determine whether a person acted intentionally, before, during, after. . . .
>
> The doctors told you that this was an intentional act. The brain, the fractures, all the bruising that they saw, this was an intentional violent act, and [Romero] knew, because that's why she fled the country, leaving everything behind.

However, during defense counsel's closing argument, he referred to the court's charge, stating, in part, the jury had to decide "whether this is intentional, that is, [Romero] intended that this result occur." Then, during the second part of the State's closing argument, the State argued, in

-13-

part, "Actually, your job is going to be easy. We know it was an intentional act. We know it was her."

We consider the totality of the circumstances as well as the fact that, although the State argued Romero intended the act, the State did not argue or suggest that the jury did not have to find that Romero intended to cause the result. Further, it was Romero's defensive theory that she was not present in the room when M.I. was injured and that M.I.'s injury was the result of an accident.

Finally, we consider any other information revealed by the record of the trial as a whole. *See Allen*, 253 S.W.3d at 264; *Almanza*, 686 S.W.2d at 171. The record shows the indictment alleged Romero "intentionally and knowingly cause[d] serious bodily injury to [M.I.]." Romero concedes that the portion of the jury charge containing the definition of knowingly was correct. Further, the jury's verdict states the jury found Romero "guilty of intentionally or knowingly causing serious bodily injury to child as charged in the indictment." Accordingly, the jury could have found that Romero knowingly caused serious bodily injury to M.I.

Even though the trial court included an instruction in the jury charge that authorized the jury to convict Romero of injury to a child if they found that she intentionally "engage[d] in the conduct," we conclude that Romero has not shown that the error resulted in egregious harm. Issue two is decided against Romero.

## IV. MODIFICATION OF THE JUDGMENT

In its sole issue on cross-appeal, the State argues the judgment should be modified to reflect the correct statute for the offense. The State argues the trial court's judgment incorrectly lists the statute for the offense as section 22.01 of the Texas Penal Code.

Romero was indicted for the offense of injury to a child. Section 22.04(a)(1) of the Texas Penal Code states that "[a] person commits [the offense of injury to a child] if he intentionally,

–14–

knowingly, recklessly, or with criminal negligence, by act . . . causes to a child . . . serious bodily injury." TEX. PENAL CODE ANN. § 22.04(a)(1). The jury charge reflects that the jury found Romero "guilty of intentionally or knowingly causing serious bodily injury to a child as charged in the indictment." The trial court's judgment states that Romero was convicted of the offense of "Injury to a Child Serious Bodily Injury." However, the trial court's judgment also lists the statute for the offense as "22.01 Penal Code." Section 22.01 of the Texas Penal Code defines the offense of assault. TEX. PENAL CODE ANN. § 22.01 (West Supp. 2014).

An appellate court has the authority to modify an incorrect judgment to make the record speak the truth when it has the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (en banc); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we conclude the trial court's judgment should be modified to reflect the correct statute for the offense, which is section 22.04 of the Texas Penal Code. Issue one of the State's cross-appeal is decided in favor of the State.

Also, although neither party raises the issue, we observe the judgment states that the deadly weapon finding was "N/A." However, the indictment alleged Romero:

> unlawfully then and there intentionally and knowingly cause[d] serious bodily injury to [M.I.], a child 14 years of age or younger, hereinafter called complainant, **by throwing and pushing complainant into a chair with her hands, a deadly weapon, and causing complainant to strike the floor, a deadly weapon, and a fireplace, a deadly weapon, and object, a deadly weapon**, the extant nature and description of which is unknown to the Grand Jurors, and unknowable to the Grand Jurors.

> and did unlawfully then and there knowingly cause[d] serious bodily injury to [M.I.], a child 14 years of age or younger, hereinafter called complaint, **by striking the complainant against a floor, a deadly weapon, and by striking complainant against a fireplace hearth, a deadly weapon, and by striking complainant with an against an object, a deadly weapon**, the exact nature and description of which is unknown to the Grand Jurors, and unknowable to the Grand Jurors.

—15—

(Emphasis added). Also, the jury charge "instructed that a deadly weapon is a firearm, or anything manifestly designed, made, or adapted for the purpose of inflicted death or serious bodily injury, or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." The application paragraphs also referred to the use of a deadly weapon. The jury found Romero guilty as charged in the indictment. *See Crumpton v. State*, 301 S.W.3d 663, 664 (Tex. Crim. App. 2009) (jury's verdict was finding that defendant used deadly weapon as verdict expressly found defendant guilty of the offense "as included in the indictment" and indictment expressly alleged defendant committed offense with "a deadly weapon"). Accordingly, we conclude the trial court's judgment should be modified to state that the jury found Romero used a "deadly weapon, not a firearm." *See* TEX. R. APP. P. 43.2(b); *Bigley*, 865 S.W.2d at 27–28; *Asberry*, 813 S.W.2d at 529–30 (appellate court has authority to sua sponte modify incorrect judgment to make record speak the truth when it has necessary information to do so).

## V. CONCLUSION

The evidence is sufficient to support Romero's conviction. Also, even though the trial court included an instruction in the jury charge that authorized the jury to convict Romero of injury to a child if they found that she intentionally "engage[d] in the conduct," Romero has not shown that she suffered egregious harm. Further, the judgment lists an incorrect statute for the offense and fails to list that Romero used a deadly weapon.

–16–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SYLVIA ROMERO, Appellant

No. 05-13-01586-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 6, Dallas County, Texas
Trial Court Cause No. F-01-16575-X.
Opinion delivered by Justice Lang. Justice
Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

(1) The portion of the trial court's judgment that states "Statute for Offense: 22.01 Penal Code" is modified to state "Statute for Offense: 22.04 Penal Code"; and

(2) The portion of the trial court's judgment that states "Findings on Deadly Weapon: N/A" is modified to state "Findings on Deadly Weapon: Deadly Weapon, Not a Firearm."

As **REFORMED**, the judgment is **AFFIRMED**

Judgment entered this 17th day of April, 2015.

LVIA ROMERO 1883677
3-A-45
RRAY UNIT
16 HWY 36 BY PASS
TESVILLE TX 76596

2 SN2

1833

LEGAL
Mail

Abell Acosta, Esq.
Clerk Court Of Criminal Appeals
P.O. Box 12308
Capitol Station
Austin, Texas 78711

